United States District Court
Southern District of Texas
**ENTERED**
August 26, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **PACIRA BIOSCIENCES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:23-cv-4147 |
| | § | |
| **QUVA PHARMA, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Pending before the Court[1] is Defendant QuVa Pharma, Inc.'s ("Defendant") Motion to Dismiss Complaint.[2] (ECF No. 11). Based on a thorough review of the motion, arguments, and relevant law, the Court **RECOMMENDS** Defendant's Motion to Dismiss Complaint (*id.*) be **GRANTED IN PART** and **DENIED IN PART**.

## I.    Background[3]

This is a false advertising case arising out of competing drug products. Plaintiff Pacira Biosciences, Inc. ("Pacira") is a pharmaceutical company that markets and manufactures EXPAREL®, a U.S. Food and Drug Administration

---

[1] On May 15, 2024, this case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (ECF No. 29).

[2] Also pending before the Court is Defendant's Motion to Dismiss Pacira's original Complaint. (ECF No. 9). The Court recommends it be **DENIED AS MOOT**.

[3] "When considering a motion to dismiss, the court accepts as true the well-pled factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

("FDA")-approved non-opioid drug that reduces post-surgical pain. (ECF No. 10 at ¶¶ 5–6). Defendant is a drug outsourcing facility that advertises, markets, and sells a compounded drug called R.E.C.K. (*Id.* at ¶¶ 16–17, 27). R.E.C.K. consists of ropivacaine, epinephrine, clonidine, and ketorolac in syringes for combined use. (*Id.* at ¶ 27). Defendant allegedly sells R.E.C.K. in the Post-Surgical Non-Opioid Regional Analgesia Category, which competes with EXPAREL®. (*Id.* at ¶¶ 27, 66).

The FDA defines compounding as a "practice in which . . ., in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes, or alters ingredients of a drug to create a medication tailored to the needs of an individual patient." (*Id.* at ¶ 18). As explained on the FDA's website, "[c]ompounded drugs are not FDA-approved. This means the FDA does not verify the safety, effectiveness or quality of compounded drugs before they are marketed." *Compounding and the FDA: Questions and Answers*, U.S. Food & Drug Admin., https://www.fda.gov/drugs/human-drug-compounding/compounding-and-fda-questions-and-answers (last visited Aug. 7, 2024). The FDA cautions of the risks associated with compounded drugs, stating, "[c]ompounded drugs should only be used in patients whose medical needs cannot be met by an FDA-

approved drug.  Unnecessary use of compounded drugs may expose patients to potentially serious health risks." *Id.*

To circumvent FDA approval requirements established under the Federal Food, Drug, and Cosmetic Act (the "FDCA") and "flood the market with its drugs as fast as possible," Pacira alleges Defendant relies on an exemption to new drug approval requirements, commonly referred to as the 503B exemption, for drugs that are compounded by registered outsourcing facilities, including R.E.C.K.  (*Id.* at ¶ 25).

In 2013, the Drug Quality and Security Act added a new section 503B to the FDCA, which established a new, voluntary category of compounders known as outsourcing facilities.  *Compounding Laws and Policies*, U.S. Food & Drug Admin.,   https://www.fda.gov/drugs/human-drug-compounding/compounding-laws-and-policies (last visited Aug. 7, 2024).  These outsourcing facilities are subject to current good manufacturing practice requirements and may distribute compounded drugs either pursuant to a patient-specific prescription or in response to an order from a health care provider, such as a hospital, that is not for an identified individual patient (e.g., for office stock).[4]  *Id.*

---

[4] The outsourcing facilities are also inspected by the FDA according to a risk-based schedule, and must meet certain other conditions, such as reporting adverse events and providing the FDA with certain information about the products they compound. *Compounding Laws and Policies*, U.S. Food & Drug Admin.,

Pacira's First Amended Complaint asserts one cause of action for a False and Misleading Advertising and Promotion claim in violation of Section 43(a)(1)(B) of the Lanham Act. (*See* ECF No. 10). Pacira alleges Defendant made false and misleading statements about R.E.C.K. in advertising and marketing materials regarding whether it qualifies for the 503B exemption, has been approved by the FDA, and/or is superior to EXPAREL®. (*See id.* at ¶¶ 64–113). Using these alleged false and misleading advertisements, Pacira claims Defendant has knowingly induced healthcare providers to purchase R.E.C.K. based on misrepresentations of its efficacy, and on the mistaken belief that it has been approved by the FDA and/or otherwise complies with the FDCA. (*Id.* at ¶ 32).

## II.   Legal Standard

Federal Rule of Civil Procedure ("Rule") 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss, a court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts. *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010). In the Fifth Circuit, motions to dismiss under Rule 12(b)(6)

---

https://www.fda.gov/drugs/human-drug-compounding/compounding-laws-and-policies (last visited Aug. 7, 2024).

are viewed with disfavor and rarely granted. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of a plaintiff, a plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994); *see also Firefighters' Ret. Sys. v. Grant Thornton, L.L.P.*, 894 F.3d 665, 669 (5th Cir. 2018) ("Although a complaint does not need detailed factual allegations, the allegations must be enough to raise a right to relief above the speculative level . . . .") (internal quotations omitted)). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Firefighters' Ret. Sys.*, 894 F.3d at 669 (quoting *Iqbal*, 556 U.S. at 678). "The court is not required to conjure up unpled allegations or construe elaborately arcane

scripts to save a complaint." *Santerre v. Agip Petroleum Co., Inc.*, 45 F. Supp. 2d 558, 568 (S.D. Tex. 1999) (internal quotations omitted).

To determine whether to grant a Rule 12(b)(6) motion, a court may only look to allegations in a complaint to determine their sufficiency. *Id.*; *Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175-TJW, 2011 WL 1004880, at *1 (E.D. Tex. Mar. 18, 2011). "A court may, however, also consider matters outside the four corners of a complaint if they are incorporated by reference, items subject to judicial notice, matters of public record, orders, items appearing in the record of a case, and exhibits attached to a complaint whose authenticity is unquestioned." *Joubert on Behalf of Joubert v. City of Houston*, No. 4:22-cv-3750, 2024 WL 1560015, at *2 (S.D. Tex. Apr. 10, 2024).

## III. Discussion

Defendant advances four arguments: (1) Pacira's compliance theory cannot support a false advertising claim; (2) Pacira's FDA-approval theory draws implausible inferences from true statements; (3) Pacira's imputed advertising theory relies on challenging protected opinions in peer-reviewed study publications and imputing such opinions to Defendant; and (4) Pacira fails to allege facts that Defendant's advertising is deceptive or material. (*See* ECF No. 11). Conversely, Pacira argues: (1) the FDCA does not preclude

Pacira's false advertising claim; (2) R.E.C.K. does not comply with Section 503B; and (3) Pacira's remaining allegations are similarly actionable. (*See* ECF No. 14).

Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125, provides in relevant part:

> Any person who . . . in commercial advertising or promotion, misrepresents the nature, characteristics, quality, or geographic origin of his or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B). The Fifth Circuit has interpreted this section of the Lanham Act as providing "protection against a 'myriad of deceptive commercial practices,' including false advertising or promotion." *Seven–Up Co. v. Coca–Cola Co.*, 86 F.3d 1379, 1387 (5th Cir. 1996) (quoting *Res. Devs. v. Statue of Liberty–Ellis Island Found.*, 926 F.2d 134, 139 (2d Cir. 1991)).

A prima facie case of false advertising under section 43(a) requires the plaintiff to establish:

> (1) A false or misleading statement of fact about a product;
>
> (2) Such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers;
>
> (3) The deception is material, in that it is likely to influence the consumer's purchasing decision;

7

(4) The product is in interstate commerce; and

(5) The plaintiff has been or is likely to be injured as a result of the statement at issue.

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 494–95 (5th Cir. 2000) (collecting cases).  "The failure to prove the existence of any element of the prima facie case is fatal to the plaintiff's claim."  *Id.*

"To obtain money damages for false advertising under § 43(a) of the Lanham Act, the plaintiff must first demonstrate that the advertisement was (1) literally false; or (2) likely to mislead and confuse customers."  *IQ Prod. Co. v. Pennzoil Prod. Co.*, 305 F.3d 368, 375 (5th Cir. 2002) (citing *Pizza Hut*, 227 F.3d at 495).  "If the statement at issue is shown to be literally false, the court must assume that it actually misled consumers, without requiring any evidence of such deception from the plaintiff."  *Id.*  "If the statement is shown to be misleading or ambiguous, however, the plaintiff must demonstrate actual deception through direct evidence of consumer reaction to the advertising or evidence of consumer surveys or consumer reaction tests."  *Id.*

A. <u>Compliance Theory</u>

Defendant argues Pacira's Compliance Theory[5] cannot support a false advertising claim. (ECF No. 11 at 15). While Defendant first argues Pacira's Compliance Theory fails to allege a plausible lack of compliance, Defendant also argues it is precluded by § 337(a) of the FDCA. (*Id.* at 17). Conversely, Pacira contends the FDCA does not preclude it's false advertising claim. (ECF No. 14 at 15).

    *i.  Preclusion*

This case involves the intersection of two federal laws: the Lanham Act and the FDCA. "The Lanham Act creates a cause of action for unfair competition through misleading advertising or labeling. Though . . . consumers [ultimately] benefit from the Act's proper enforcement, the cause of action is for competitors, not consumers." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014). "The FDCA statutory regime is designed primarily to protect the health and safety of the public at large." *Id.* at 108. "Unlike the

---

[5] Defendant defines Pacira's Compliance Theory by asserting: "[Defendant] does not compound R.E.C.K. in compliance with the FDCA, purportedly because R.E.C.K.'s active ingredients are not on FDA's Drug Shortage List (DSL) and because R.E.C.K. has more than one active ingredient. Based on these allegations, Pacira asserts [Defendant]'s description of itself as an FDA registered 503B outsourcing facility with a proven FDA compliance record and 503B Capabilities is false and misleading." (ECF No. 11 at 6–7 (internal quotations omitted)).

9

Lanham Act, which relies in substantial part for its enforcement on private suits brought by injured competitors, the FDCA and its regulations provide the United States with nearly exclusive enforcement authority . . . . Private parties may not bring enforcement suits." *Id.* at 109 (citing 21 U.S.C. §§ 333(a), 337).

In *POM Wonderful*, the United States Supreme Court held Congress did not intend the FDCA to preclude a private party from bringing a Lanham Act claim that challenges a food label, regulated by the FDCA, as misleading. *Id.* at 121. The Supreme Court reasoned that "because the plaintiff there sought to 'enforce the Lanham Act, not the FDCA or its regulations,' the FDA's exclusive enforcement authority did not itself warrant preclusion of the plaintiff's Lanham Act claim." *Azurity Pharms., Inc. v. Edge Pharma, LLC*, 45 F.4th 479, 489 (1st Cir. 2022) (quoting *POM Wonderful*, 573 U.S. at 117).

While *POM Wonderful* specifically analyzed the intersection of the FDCA and the Lanham Act with respect to a label on a food item, the First Circuit in *Azurity* analyzed the intersection with respect to a statement about a drug. *Id.* at 488–89, 499–502. In that case, a specialty pharmaceutical company sued a drug compounding company under the Lanham Act based on statements the drug compounding company allegedly made on its website. *Id.* at 483. The district court dismissed the pharmaceutical company's Lanham

10

Act claim on the ground that the FDCA precluded it. *Id.* at 483–84. The First Circuit ultimately vacated and affirmed the dismissal in part, finding (1) the case was not one in which a finding that a statement was actionable under the Lanham Act called into question the lawfulness of a statement the FDA deemed proper; (2) the parties did not identify an FDA regulation that governed the statements that outsourcing facilities may make in advertising; and (3) the case was not one in which a plaintiff was attempting to enforce the FDCA indirectly. *Id.* at 499–500. "[R]ather than enforcing the FDCA, [the pharmaceutical company was] merely pursuing a private right of action under the Lanham Act." *Id.* at 500. Thus, the First Circuit did not find "the kind of conflict between Lanham Act enforcement and FDA policy discretion" needed to find a Lanham Act claim to be precluded by the FDCA. *Id.* at 502.

The case here is similar to *Azurity*. Pacira, a pharmaceutical company, is suing Defendant, a drug compounding company, under the Lanham Act based on claims Defendant allegedly made on its website and in advertising and marketing materials. (ECF No. 10 at ¶¶ 16, 35, 117). Pacira alleges these claims represent or convey the impression that R.E.C.K. qualifies for section 503B of the FDCA, which authorizes drug compounders who meet certain conditions to market their compounded drugs without first obtaining FDA

approval.  (*Id.* at ¶¶ 72, 81, 87, 88, 101).  Pacira alleges these statements are literally false and/or impliedly false and misleading.  (*Id.* at ¶ 116).

Relying on *Azurity*, Pacira argues its First Amended Complaint alleges that "R.E.C.K. is not 503B compliant because 'neither the bulk substances comprising R.E.C.K. nor R.E.C.K. itself appear on the Drug Shortage List or Clinical Need List.'"  (ECF No. 14 at 19–20).  Pacira continues, stating that "[a]djudicating that claim 'simply requires a court to ascertain whether a particular drug appears on either the list of "bulk drug substances for which there is a clinical need" or on the drug shortage list.'"  (*Id.* at 20 (quoting *Azurity*, 45 F.4th at 501)).  "Because that determination does not require the Court to interpret the FDCA or the FDA's regulations," Pacira argues its 503B claims are not precluded.  (*Id.*).

Conversely, Defendant asserts *Azurity* "has no relevance here because all of R.E.C.K.'s active ingredients are sources either from FDA-approved starting materials or are on [the] FDA's [Drug Shortage List]."  (ECF No. 11 at 21).  While Defendant finds *Azurity* "unpersuasive," the Court disagrees. Following the analysis of First Circuit, the Court finds no basis for dismissing "this variant" of Pacira's Lanham Act claim on the ground that the FDCA precludes it.  (ECF No. 15 at 13).

12

First, like in *Azurity*, the FDA did not preapprove the claims by Defendant that Pacira alleges were made in violation of the Lanham Act. *See Azurity*, 45 F.4th at 500. Thus, "this case is not one in which a finding that the statement is actionable under the Lanham Act calls into question the lawfulness of a statement that the FDA has deemed proper." *Id.* Second, it appears there is "no FDA regulation that governs the statements that outsourcing facilities may make in advertising." *Id.* Third, "this is not a case in which a plaintiff is attempting to enforce the FDCA indirectly." *Id.* While Section 503B regulates how compounded drugs may be labeled, *see* 21 U.S.C. § 353b(a)(10), "neither party suggests that section 503B or any other provision of the FDCA regulates the statements that outsourcing facilities may make in advertising." *Id.*

Defendant argues "Pacira's theory of liability requires the Court to step into [the] FDA's shoes and find violations of the FDCA where the FDA has not." (ECF No. 11 at 21; *see also* ECF No. 15 at 11 (arguing Pacira's contention that R.E.C.K. does not qualify for the 503B exemption "requires this Court to interpret, apply, and enforce the FDCA, and do so in a way [the] FDA never has.")). However, Pacira contends the Court "need only confirm that (i) none of the bulk drug substances used by Defendant in compounding R.E.C.K. are

13

on the FDA's Clinical Need List (i.e., the bulk drug substance list); and (ii) R.E.C.K. does not appear on the Drug Shortage List." (ECF No. 14 at 18). The Court agrees with Pacira.

"[T]he adjudication of this claim simply requires a court to ascertain whether a particular drug appears on either the list of 'bulk drug substances for which there is a clinical need,' or on the drug shortage list." *Azurity*, 45 F.4th at 501; *see also Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 939 (8th Cir. 2005) ("The question of whether [the defendant's product] has been approved as safe and effective is much different from the question of whether [the defendant's product] should be approved as safe and effective, and it is only the latter that requires the FDA's scientific expertise."). To be clear, as noted by Defendant, "claims that require a court to interpret, apply, or enforce the FDCA remain precluded." (ECF No. 15 at 12 (quoting *Church & Dwight Co. Inc. v. SPD Swiss Precision Diagnostics, GmbH*, 104 F. Supp. 3d 348, 361 (S.D.N.Y. 2015), *aff'd*, 836 F.3d 153 (2d Cir. 2016), and *aff'd*, 843 F.3d 48 (2d Cir. 2016)). However, a claim that merely requires a court to cross-reference a list is not precluded. *See Azurity*, 45 F.4th at 502 n.11 ("[T]he Supreme Court rejected in *POM Wonderful* the argument that because only the FDA can enforce the FDCA, Lanham Act claims based on a statement also regulated by

14

the FDCA are categorically precluded.").  Accordingly, the Court finds Pacira is merely pursuing a private right of action under the Lanham Act, and Pacira's claim is not precluded by the FDCA.

ii.    *Allegations as to Compliance*

Defendant argues Pacira fails to allege a plausible lack of compliance. (ECF No. 11 at 15).  Specifically, Defendant argues Section 503B authorizes it to use each of the active ingredients—two bulk active pharmaceutical ingredients on the FDA's Drug Shortage List and two FDA-approved starting materials—in R.E.C.K.[6]  (*Id.* at 16).

In response, Pacira contends "the plain text of [Section 503B] does not permit outsourcing facilities to compound drug products under the guise of the drug-shortage-list exception by combining versions of drugs in shortage with other FDA-approved drug products, unless the *finished* compounded drug itself appears on the Drug Shortage List."  (ECF No. 14 at 21).

---

[6] Defendant also disputes Pacira's argument that R.E.C.K. is not 503B-compliant because it contains more than one active ingredient, arguing Defendant's compounding of R.E.C.K. with four active ingredients complies with Section 503B.  (ECF No. 11 at 16–17).  However, Pacira describes Defendant's argument as a red herring, arguing that "R.E.C.K. does not fail to comply with Section 503B merely because it contains more than one active ingredient; rather, it fails to comply with Section 503B because (1) it contains bulk drug substances that do not appear on the FDA's Clinical Need List, and (2) the finished compounded drug does not appear on the Drug Shortage List."  (ECF No. 14 at 23 n.6).  Because Pacira advances this same argument in response to Defendant's other compliance argument, the Court's analysis as to this issue is incorporated into the main discussion.

15

The R.E.C.K. ingredients at issue are its two bulk drug substances: ropivacaine and epinephrine.  Also at issue is the language of Section 503B's Drug Shortage List provision.  Section 503B permits compounding using bulk drug substances in two circumstances: (1) "the bulk drug substance appears" on the Clinical Need List or (2) "the *drug* compounded from such bulk drug substance appears on the drug shortage list . . . at the time of compounding, distribution, and dispensing."  21 U.S.C. § 353b(a)(2) (emphasis added).  The parties dispute what the word "drug" refers to in the second exception.

For example, Pacira emphasizes that under the second exception, "it is the finished compounded drug product that must appear on the Drug Shortage List, *not* that individual bulk drug substances that comprise the final product." (*Id.* at 22 (emphasis in original)).  Stated another way, Pacira interprets "the drug compounded from such bulk drug substance appears on the drug shortage list" to mean "the *finished* compounded drug itself [must] appear on the Drug Shortage List." (ECF No. 14 at 21).  Applying that concept to the instant case, Pacira argues R.E.C.K. itself must appear on the Drug Shortage List, not its two bulk drug substances (ropivacaine and epinephrine). (*Id.*).  Thus, because "the Drug Shortage List *does not* include any finished drug product comprised

of ropivacaine, epinephrine, clonidine, and ketorolac," Pacira argues R.E.C.K. does not fall under the exemptions to the FDCA. (*Id.*).

Conversely, Defendant argues the "drug" in the second exception refers to the drug ingredients being compounded. (ECF No. 15 at 7). Applying that concept to the instant case, Defendant argues ropivacaine and epinephrine must appear on the Drug Shortage List to comply with Section 503B. (*Id.*). Thus, Defendant maintains that, because ropivacaine and epinephrine are both on the Drug Shortage List, its "compounding" complies with Section 503B's section exception. (*Id.*).

"[T]he role of the court on a Rule 12(b)(6) motion to dismiss is to determine whether the plaintiff, as a matter of law, cannot prevail on its claims even if the plaintiff were to prove all the facts alleged in the complaint." *Software Publishers Ass'n v. Scott & Scott, LLP*, No. 3:06-cv-0949, 2007 WL 92391, at *7 (N.D. Tex. Jan. 11, 2007). Accepting Pacira's allegations as true, as the Court must at this stage, Defendant's advertisements and statements misrepresent whether R.E.C.K. qualifies for the 503B exemption. (ECF No. 10 at ¶ 117). Without delving into the construction of Section 503B's Drug Shortage List provision, the Court finds Pacira has pleaded enough facts to sufficiently allege its Compliance Theory. *See, e.g.*, *Vinton Pub. Power Auth.*

*v. Sam Rayburn Mun. Power Agency*, No. 4:20-cv-3609, 2021 WL 3775641, at *4 (S.D. Tex. July 20, 2021), *report and recommendation adopted*, No. 4:20-cv-3609, 2021 WL 3772406 (S.D. Tex. Aug. 24, 2021) ("A ruling on the merits of Plaintiff's claims based on statutory and contract interpretation at the motion to dismiss stage is premature."). Accordingly, the Court recommends Defendant's Motion to Dismiss be denied as to Pacira's Compliance Theory allegations.

B. <u>FDA-Approval Theory</u>

Defendant also argues Pacira's FDA-Approval Theory[7] fails as a matter of law and should be dismissed. (ECF No. 11 at 22–23). Defendant specifically argues Pacira offers no example of a statement by Defendant that R.E.C.K. is FDA-approved, citing the following portions of Pacira's First Amended Complaint:

- "[Defendant] has distributed misleading advertisements and marketing materials that are intended to, and do, imply that the FDA has approved it." (ECF No. 10 at ¶ 29).

- "[Defendant] has made misleading statements in advertising and promotion that claim or imply that [] R.E.C.K. . . . has been

---

[7] Defendant defines Pacira's FDA-Approval Theory as Pacira asserting: "[Defendant]'s statements that it uses only FDA-approved, commercially available sterile starting material or [active pharmaceuticals ingredients ("API")] starting material only from suppliers that are FDA approved are literally false and misleading because they suggest R.E.C.K. and/or its components have obtained FDA approval." (ECF No. 11 at 7 (internal quotations omitted)).

approved by FDA and/ or has been subjected to clinical studies and trials." (*Id.* at ¶ 31).

- "Using these false and misleading advertisements, [Defendant] has knowingly induced healthcare providers to purchase the R.E.C.K. product based on misrepresentations of its efficacy, and on the mistaken belief that it has been approved by the FDA and/ or otherwise complies with the FDCA." (*Id.* at ¶ 32).

- "These statements also give the false impression R.E.C.K. itself qualifies for the 503B exemption and/ or is otherwise FDA-approved, when in fact it does not and is not." (*Id.* at ¶ 84).

- "Stated on public websites in connection with R.E.C.K. that [Defendant] 'uses only FDA-approved, commercially available sterile starting material' or 'API starting material only from suppliers that are FDA approved,' which is literally false and misleading because it falsely suggests that the product and/ or its individual components have obtained FDA approval (which would verify safety and efficacy), which it has not." (*Id.* at ¶ 117).

- "Advertised on public websites in connection with R.E.C.K. that [Defendant] has a 'proven FDA compliance record' and '503B Capabilities,' which is false and misleading because it falsely suggests that [Defendant]'s products, including R.E.C.K. are marketed in compliance with FDA regulations, which they are not since R.E.C.K. is not FDA-approved or covered by the 503B exemption." (*Id.*).

(ECF No. 11 at 22). Defendant also specifically states its advertising "does [not] describe R.E.C.K. as FDA-approved." (*Id.*). Thus, relying on a Fourth Circuit decision, Defendant argues Pacira's implied approval theory should fail as a matter of law. (*Id.*).

19

The Fourth Circuit has held false advertising claims based on allegations of implied governmental approval are not allowed absent an explicit representation of government approval, *i.e.* that drugs had received FDA approval. *See Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1139 (4th Cir. 1993). Since its decision in *Mylan*, "[d]istrict courts across the country have followed the Fourth Circuit's reasoning." *See Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, No. 21-cv-01280, 2021 WL 11593043, at *8 (N.D. Cal. Aug. 16, 2021) (collecting cases). While not binding, the Court finds the Fourth Circuit's reasoning in *Mylan* persuasive. Thus, because Pacira's First Amended Complaint does not allege Defendant's materials or advertisements provide an explicit representation of government approval of R.E.C.K., the Court recommends Pacira's FDA-Approval Theories be dismissed.

C. <u>Imputed Advertising Theory</u>

Defendant also argues Pacira's Imputed Advertising Theory[8] that Defendant advertises R.E.C.K. as superior to EXPAREL® fails because the advertisements (1) do not belong to Defendant; (2) are not false; and (3) are

---

[8] Defendant defines Pacira's Imputed Advertising Theory as Pacira adding: "allegations relating to published clinical studies cited on [Defendant]'s website and characterizes these published studies as [Defendant]'s own advertising. . . . Imputing the studies' conclusions to [Defendant], Pacira again asserts that [Defendant] advertises R.E.C.K. (allegedly falsely) as safe and effective and as both superior and generic to Exparel." (ECF No. 11 at 7 (internal quotations and citations omitted)).

20

inactionable opinions.  (ECF No. 11 at 24).  Defendant specifically challenges Pacira's use of two published studies as statements, arguing these cannot be imputed to Defendant.  (*Id.*).

While the Fifth Circuit has not held "[d]issemination of a scientific article as part of a company's marketing campaign is for promotional purposes and therefore qualifies as commercial speech," it has acknowledged the argument.  *See Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 237 (5th Cir. 2014) (citing *First Amend.-False Advert.-Second Cir. Affirms That Dissemination of Sci. Publ'ns Cannot Be False Advert. Under the Lanham Act.-Ony, Inc. v. Cornerstone Therapeutics, Inc.*, 127 Harv. L. Rev. 1815, 1819 (2014)).

However, "to invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the *defendant's* misrepresentations."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014) (emphasis added).  Here, Pacira's First Amended Complaint fails to allege how two independently published studies, which were not authored or produced by Defendant, are Defendant's statements.  Thus, as to Pacira's Imputed Advertising Theory allegations,

Pacira fails to allege an essential element of their false advertising claim. *See IQ Prod.*, 305 F.3d at 375 ("The focus of the Lanham Act is on commercial interests [that] have been harmed by a competitor's false advertising."). Accordingly, the Court recommends Pacira's First Amended Complaint be dismissed as to Pacira's Imputed Advertising allegations.

### D. Deceptive or Material

Lastly, Defendant argues Pacira fails to allege facts that Defendant's advertising is deceptive or material. (ECF No. 11 at 29). Defendant states "Pacira does not allege that [Defendant]'s advertising is literally false," and, thus, argues Pacira fails to "allege facts that customers were both misled by Defendant's advertisements and purchased R.E.C.K. because of the allegedly misleading messages." (*Id.*). Conversely, Pacira maintains its allegations, taken as true, demonstrate Defendant's advertising is both false and misleading. (ECF No. 14 at 27–28). For support, Pacira cites to six paragraphs from its First Amended Complaint. (*Id.* (citing ECF No. 11 at ¶¶ 32, 57, 85, 99, 109–10)).

In its Reply, Defendant maintains the First Amended Complaint fails to identify a single Defendant customer and instead relies on vague assertions regarding "healthcare providers." (ECF No. 15 at 20). Defendant adds Pacira

pleads no facts that any customer "was actually deceived or that such deception influenced the customer's decision to buy R.E.C.K." (*Id.*).

"When deciding a motion to dismiss under Rule 12(b)(6), the District Court must accept the factual allegations as true and resolve all doubts as to the sufficiency of the claim in the plaintiff's favor." *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001). In its First Amended Complaint, Pacira alleges (1) Defendant's advertisements have knowingly induced healthcare providers into purchasing R.E.C.K., (2) Defendant has placed advertisements in Pharmacy Practice News, "a publication directed at health-system pharmacists," and (3) Defendant has advertised its claims "at tradeshows and conferences across the country, including as recently as December 2023 at the American Society of Hospital Pharmacists [] Conference." (ECF No. 10 at ¶¶ 32, 85, 99). Accepting Pacira's allegations as true, as the Court must, the Court finds Pacira has alleged enough facts regarding healthcare professionals at this stage to show Defendant's advertising is deceptive or material. (*See* ECF No. 10 at ¶¶ 32, 85, 99, 109–10).

## IV.   Conclusion

Based on the foregoing, the Court **RECOMMENDS** Defendant's Motion to Dismiss Complaint (ECF No. 11) be **GRANTED IN PART** as to Pacira's FDA-Approval and Imputed Advertising Theories and **DENIED IN PART** as to Pacira's Compliance Theory and Defendant's argument regarding deceptive and material allegations.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

**SIGNED** in Houston, Texas on August 26, 2024.

Richard W. Bennett
United States Magistrate Judge